**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Gil Ricardo GAVILAN,**
**Defendant-Appellant.**

**No. 84–2373.**

United States Court of Appeals,
Fifth Circuit.

May 28, 1985.

Bush & Donnelly, J. Steven Bush, Dallas, Tex., for defendant-appellant.

Daniel K. Hedges, U.S. Atty., Susan L. Yarbrough, James R. Gough, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before RUBIN, WILLIAMS and DAVIS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A Cuban refugee was indicted for possession with intent to distribute approximately ten pounds of marijuana. Facing a maximum sentence of five years in prison, $15,000 fine, and a special parole term of at least two years, he entered a guilty plea on the advice of retained counsel. Counsel did not know and, therefore, did not advise the refugee that conviction would prompt the Immigration and Naturalization Service (INS) to revoke the refugee's immigration parole and thereby exclude him from the United States,[1] and that he would then be deported if another country agreed to accept him, or, failing this, that the INS might detain him indefinitely.[2] He seeks post-conviction relief, urging that his conviction be set aside on the grounds that his plea was not knowingly entered and his counsel was ineffective for failing to inform him of these collateral consequences of pleading guilty. Finding that Gavilan's ignorance of these consequences did not render his guilty plea defective and that he has not shown that his lawyer's failure to warn of these consequences prejudiced him, we affirm the district court's denial of his motion to vacate the sentence.

Gil Ricardo Gavilan arrived in the United States in 1980 as a refugee of the Freedom Flotilla from Mariel, Cuba. He promptly received a conditional release into this country, termed a temporary parole, pursuant to 8 U.S.C. § 1182(d)(5). After his arrest for possession of marijuana, the INS placed an immigration "hold" on Gavilan, which his counsel succeeded in removing.

When Gavilan later tendered a guilty plea the district court described the permissible range of punishment for the offense charged, which included a mandatory parole term in addition to any imprisonment ordered. Gavilan stated that his counsel had explained, and that he understood, the meaning of "special parole." Upon Gavilan's further representation that he was not advised to plead guilty as a result of any threat or promise other than the Government's plea agreement, the court concluded his plea was voluntarily entered.

In addition to the two-year special parole term, the court sentenced Gavilan to 60 days in jail and placed him on four years supervised probation. After serving his prison term, Gavilan was delivered to INS authorities, who detained him pending exclusion proceedings.

At the hearing on his § 2255 motion to vacate his sentence, Gavilan testified that he thought his immigration problems were over once the previous INS "hold" was removed. He observed that his prior conviction in Texas for carrying a weapon had not affected his immigration status. He further testified that he understood the court's imposition of special parole, but he did not connect this idea with his immigration parole. Gavilan testified that, without realizing the INS had separate powers, he thought that whatever punishment he received from the sentencing court was all that could happen to him.

Gavilan does not dispute that his guilty plea was entered in compliance with Federal Rule of Criminal Procedure 11. He contends that the plea offends the due process clause, however, because he was unaware, and his defense counsel failed to warn him, that his conviction might result in severe collateral consequences—deportation or indefinite detention by the INS. Further, he

---

**1.** 8 U.S.C. § 1182(a)(23).

**2.** *See* 8 C.F.R. §§ 212.5(d), 237.6(b) (1985) (INS procedures).

advances the related claim that defense counsel's failure to advise him of these possible ramifications amounted to ineffective assistance of counsel.

To obtain vacation of his conviction at this juncture, Gavilan must show "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." [3]

Testimony from Gavilan's counsel at the § 2255 evidentiary hearing has prompted Gavilan to suggest on appeal not only that he was uninformed by counsel, as he contended initially, but also that counsel misinformed him that he would not be deported after pleading guilty. This is not supported by the record and was not advanced below. We, therefore, do not consider it.

■ Gavilan relies on state cases that do not cite federal decisions and rest on varying state rules concerning ineffectiveness of counsel and voluntariness of guilty pleas.[4] He cites no federal decision for the proposition that defense counsel's failure to advise a defendant of a collateral consequence of a guilty plea requires the post-sentence withdrawal of that plea.

In *United States v. Parrino*,[5] the Second Circuit refused to permit withdrawal of a guilty plea even though the defendant reasonably relied on his attorney's erroneous advice that he would not be deported. Similarly, in *United States v. Santelises*,[6] the Second Circuit refused to entertain a defendant's contention that he was unaware of possible deportation absent an allegation that his counsel affirmatively misrepresented the consequence. Indeed, a defendant's misunderstanding about the prospect of deportation, without more, has been repeatedly viewed as insufficient to render a guilty plea involuntary.[7]

We have refused to grant relief because of a defendant's ignorance of other collateral consequences. In *Moore v. Hinton*,[8] for example, this court cited *Parrino* in rejecting a pro-se defendant's due process challenge based on the failure to inform him that he would lose his driver's license as a result of a drunk driving conviction.[9] And in *Meaton v. United States*,[10] we rejected a defendant's contention that he should be permitted to withdraw his guilty plea to a mail fraud charge because he had not been informed that, as a convicted felon, he would forfeit his rights to vote and to travel abroad.

■ The result is not changed by converting the charge into one of ineffectiveness of counsel. Gavilan has not shown that he was prejudiced by counsel's omissions. To show prejudice in the context of a guilty plea, Gavilan must demonstrate a "reasonable probability that, but for [the various failures of the attorney], the result of the [plea proceedings] would have been different." [11]

3. *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417, 420 (1962); *see United States v. Timmreck*, 441 U.S. 780, 783–84, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634, 638 (1979); Fed.R.Crim.P. 32(d), Notes of Advisory Committee, 1983 Amendment.

4. *See* Comment, *Collateral Consequences of Guilty Pleas in the Federal Criminal Justice System*, 16 Harv.C.R.C.L.L.Rev. 157, 169–70 & n. 42 (1981).

5. 212 F.2d 919, 921–22 (2d Cir.1954).

6. 509 F.2d 703, 704 (2d Cir.1975).

7. *See United States v. Russell*, 686 F.2d 35, 39 (D.C.Cir.1982); *United States v. Sambro*, 454 F.2d 918, 921–22 (D.C.Cir.1971); *Nunez Cordero v. United States*, 533 F.2d 723, 726 (1st Cir.1976).

8. 513 F.2d 781, 782–83 (5th Cir.1975).

9. *See also Hill v. Lockhart*, 731 F.2d 568, 570–72 (8th Cir.1984); *Brown v. Perini*, 718 F.2d 784, 786, 788–89 (6th Cir.1983).

10. 328 F.2d 379 (5th Cir.1964).

11. *Thomas v. Lockhart*, 738 F.2d 304, 307 (8th Cir.1984) (quoting *Strickland v. Washington*, —— U.S. ——, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984)); *see United States v. Carr*, 740 F.2d 339, 349 (5th Cir.1984); *Mitchell v. Scully*, 746 F.2d 951, 954–55, 957 (2d Cir.1984); *Evans v. Meyer*, 742 F.2d 371, 375 (7th Cir.1984).

The district court's finding, uncontested, is that, despite counsel's failure to advise of collateral consequences, Gavilan knew his immigration status might be imperiled by bad conduct.[12] Indeed, Gavilan has never contended that he would have pleaded not guilty had counsel properly advised him. Nor has Gavilan protested his innocence.[13]

Gavilan has not, therefore, demonstrated that he would have pleaded differently had counsel advised him of the collateral consequences. This conclusion is not to be considered an approval of counsel's conduct. Deportation is a severe, albeit indirect, consequence of conviction.[14] Although counsel had notice through a post-arrest immigration hold that Gavilan's alien status might be in jeopardy, he did not consider any effect the conviction might have on Gavilan's ability to remain in this country. Counsel's errors do not, however, warrant setting aside the guilty plea.[15] Our affirmance of the district court's dismissal neither condones nor approves counsel's omissions.

For the reasons given, the judgment is AFFIRMED.

---

12. *See Diaz v. Martin*, 718 F.2d 1372, 1379 (5th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2358, 80 L.Ed.2d 830 (1984); *Timmreck, supra,* 441 U.S. at 784, 99 S.Ct. at 2087, 60 L.Ed.2d at 638 (1979).

13. *See Timmreck, supra,* 441 U.S. at 784, 99 S.Ct. at 2087, 60 L.Ed.2d at 638 (1979).

14. *See Russell, supra,* 686 F.2d at 38.

15. *See Strickland v. Washington, supra,* —— U.S. at ——, 104 S.Ct. at 2065–66, 80 L.Ed.2d at 693–95.