**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 24, 2012

No. 11-40742

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JUAN DIAZ GARCIA,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before DAVIS, OWEN and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Juan Garcia pled guilty to illegal reentry.  Before sentencing, he filed a motion under 18 U.S.C. § 3006A(c) for an additional court-appointed attorney to seek to have a prior state felony conviction set aside in an Iowa court.  The prior Iowa conviction lengthened the advisory sentencing range for the illegal reentry offense.  The district court determined the purpose would not be an appropriate use of Criminal Justice Act funds.  We AFFIRM.

BACKGROUND

The Criminal Justice Act ("CJA") creates a system for the appointment and payment of counsel for defendants unable to afford representation.  *See* 18

No. 11-40742

U.S.C. § 3006A. At issue here is subsection (c) which concerns the ability of district courts to appoint counsel in federal criminal prosecutions.

Juan Garcia is a Mexican national who, after having his permanent-resident status revoked, was deported to Mexico on July 1, 2009. He was later indicted for being found illegally in the United States. *See* 8 U.S.C. § 1326. To assist with his defense to this charge, he was appointed a CJA attorney under Section 3006A. With the benefit of that counsel, Garcia agreed to plead guilty.

A Pre-sentence Investigation Report was prepared. It showed that on September 4, 2008, Garcia had pled guilty in an Iowa state court to delivery of cocaine. This prior offense added 12 levels to his base offense and enhanced his Criminal History Category from I to III. *See* U.S. Sentencing Guidelines Manual § 2L1.2(b)(1)(B); § 4A1.1(b) & (d).[1] This resulted in a sentencing range of 33 to 41 months. Without the Iowa offense it would have been between zero and six months. The district court imposed a sentence of 30 months.

Before sentencing, Garcia requested appointment of an attorney in Iowa under Section 3006A(c). He alleged that his prior Iowa counsel had not complied with the duty to advise him that a guilty plea would have adverse consequences for his immigration status. *See Padilla v. Kentucky*, 130 S. Ct. 1473 (2010); *United States v. Amer*, 681 F.3d 211, 212 (5th Cir. 2012). Garcia's current counsel had contacted Iowa attorneys and believed one "would be willing to represent [Garcia] in state court to prepare and prosecute a *Padilla* claim."

The district court denied the motion for additional counsel with a written order assigning reasons. Sentencing then followed. Garcia timely appealed.

## DISCUSSION

We need not determine the validity, either in the Fifth Circuit or in Iowa, of the kind of petition Garcia wants a new counsel to file. Our different

---

[1] Two levels were subtracted for Garcia's acceptance of responsibility. *See* U.S.S.G. § 3E1.1(a).

2

responsibility concerns whether the district court correctly determined that it should not dedicate funds, allotted for the representation of indigent persons charged with federal crimes, to hire Iowa counsel in order to pursue state postconviction relief. While the "decision whether to appoint counsel rests in the discretion of the district court," the question of whether an appointment for this purpose complies with the CJA is a legal issue we review *de novo*. *United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995); *see United States v. Claro*, 579 F.3d 452, 456 (5th Cir. 2009).

Garcia urges us to consider Sixth Amendment principles. It has long been the rule, though, that there is no constitutional entitlement to appointed counsel in postconviction relief proceedings such as those Garcia seeks to pursue in Iowa. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). This continues to be the Supreme Court's interpretation of the Amendment, although the Court recently raised without deciding a possible narrow exception to the rule. *See Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012). The Sixth Amendment is of no aid here.

We are interpreting a statute, and thus we start with Congress's language. *City of Arlington, Tex. v. F.C.C.*, 668 F.3d 229, 255 (5th Cir. 2012). The relevant CJA provision states that any "person for whom counsel is appointed shall be represented at every stage of the proceedings from his initial appearance before the United States magistrate judge or the court through appeal, including ancillary matters appropriate to the proceedings." 18 U.S.C. § 3006A(c). Garcia argues that "ancillary matters" could include the setting aside of a prior state conviction that affects the sentence he might receive in the prosecution for which he has already been assigned CJA counsel.

Not often have we had to address the meaning of "ancillary." We rejected a defendant's claim that a motion to reduce his sentence under 18 U.S.C. § 3582(c)(2) was an ancillary matter. *Whitebird*, 55 F.3d at 1011. A more recent panel questioned whether developments after *Whitebird* call for a different

result as to Section 3582 proceedings. *United States v. Robinson*, 542 F.3d 1045, 1051-52 (5th Cir. 2008).[2] Nonetheless, we still find instructive the observation that "'ancillary matters' refers to those involved 'in defending the principal criminal charge' and not to post-conviction proceedings." *Whitebird,* 55 F.3d at 1010 (quoting *United States v. Reddick*, 53 F.3d 462, 464 (2d Cir. 1995)).

Another circuit has held that state collateral proceedings are not ancillary because legislative history from the CJA's passage "suggests that 'ancillary matters' are limited to proceedings comprehended within the action for which the appointment was made." *In re Lindsey*, 875 F.2d 1502, 1508 (11th Cir. 1989). This would include matters such as mental competency hearings, or efforts to secure the presence of witnesses. *Id.*

Definitions from dictionaries convey a similar limitation. One standard general-purpose dictionary defines "ancillary" as "subordinate, subsidiary." *Webster's Third New International Dictionary* 80 (1993). A major law dictionary also defines it using "subordinate." *Black's Law Dictionary* 101 (9th ed. 2009). An Iowa postconviction proceeding is not subordinate to or a subpart of a federal criminal prosecution.

Additional assistance in finding meaning comes from the Guidelines for Administering the CJA and Related Statutes prepared by the Judicial Conference of the United States, *Guide to Judiciary Policy*, Vol. 7, Pt. A. The Supreme Court has examined these CJA Guidelines when ruling on a motion for CJA fees. *In re Berger*, 498 U.S. 233, 234 (1991) (per curiam). The CJA Guidelines suggest that a court consider, in deciding whether a matter is ancillary, whether "the issues of law or fact in the matter, arose from, or are the

---

[2] We note that the court ultimately declined to decide the issue and instead "assum[ed] for the sake of argument that this § 3582(c)(2) proceeding is not ancillary to Robinson's original criminal case – but rather is collateral." *Robinson*, 542 F.3d at 1052.

same as or closely related to, the facts and circumstances surrounding the principal criminal charge." § 210.20.30(b).[3]

We conclude that Garcia's prior state felony conviction is irrelevant to the principal charge against the defendant in federal court. The potential merit of a challenge in Iowa state court to a prior conviction does not concern issues of law or fact related to the illegal reentry charge. The relevant law for the district court in Texas is a federal criminal statute, while the Iowa proceeding would concern issues of Sixth Amendment law, the Supreme Court's retroactivity doctrine, and perhaps Iowa procedure. *See Perez v. Iowa*, --- N.W.2d ----, 2012 WL 2052399, at *6, *8 (Iowa June 8, 2012) (discussing Iowa Code Section 822.3).

We hold that Garcia's challenge to a prior, unrelated conviction in a state court that could affect the sentence he receives on a new federal conviction is not an ancillary proceeding under Section 3006A(c).

AFFIRMED.

---

[3] Once a matter has been determined to be ancillary, the CJA Guidelines provide six non-exhaustive considerations in deciding whether representation is "appropriate" or not. § 210.20.30(c). Those considerations do not apply here because of our determination that the purpose of the representation is not ancillary to the federal prosecution.